DALBEY BROTHERS LUMBER COMPANY, Appellee, v. HARLAN F. CRISPIN et ux., Appellants; E. W. EWELL et al., Appellees.

No. 46305.

152

Guy A. Miller, of Des Moines, for Harlan F. Crispin and Elizabeth M. Crispin, appellants.

Gibson, Stewart & Garrett and Wendell Gibson, all of Des Moines, for plaintiff appellee.

Ted Sloane, of Des Moines, for E. W. Ewell, defendant appellee.

J. Rudolph Hansen, of Des Moines, for H. T. Rasmussen, defendant appellee.

Lehmann, Hurlburt & Hossfeld, of Des Moines, for O'Rourke Construction Materials Company, defendant and cross-petitioner appellee.

George F. Brooks, of Des Moines, for Louis Zane, defendant and cross-petitioner appellee.

WENNERSTRUM, J.—Plaintiff, in an action in equity, sought personal judgment against the defendant owners of real property and the contractor who erected a residence and garage

for them, for materials claimed to have been furnished the defendant owners, and, in this action, also sought to foreclose a mechanic's lien filed by the plaintiff and asked that liens of other materialmen be held junior to that of plaintiff. Cross-petitions were also filed by some of the defendants who had furnished materials and supplies in the construction and completion of the residence and garage. The trial court entered a judgment in rem in favor of the plaintiff against the premises owned by the defendant owners of the real estate affected by the mechanic's lien filed by plaintiff in the amount of $724.67, with interest. The court also entered judgment in rem and established and confirmed the liens of O'Rourke Construction Materials Company and Louis Zane, establishing the priority of the liens of the named materialmen in the order named. The court denied the plaintiff and cross-petitioners any personal judgment against the defendants Harlan F. Crispin and Elizabeth M. Crispin. Personal judgments were entered against E. W. Ewell, the contractor, in favor of plaintiff, and also in favor of O'Rourke Construction Materials Company and Louis Zane. The court confirmed the lien of H. T. Rasmussen but denied to him the right to have the property involved sold under his lien or to share in the proceeds of any sale because he had not asked for such relief. The defendants Harlan F. Crispin and Elizabeth M. Crispin have appealed from the decree entered by the trial court.

The appellants, Harlan F. Crispin and Elizabeth M. Crispin, his wife, are joint owners of a lot in a suburban portion of the city of Des Moines. They entered into an agreement with Ewell, a contractor, to build a house and garage on a lot owned by them. Lumber and materials for the construction of the improvements made on the Crispin lot were purchased from the plaintiff appellee by Ewell. It is claimed in the pleadings that Ewell acted as agent for the Crispins in the purchase of the materials. Testimony was introduced that the lumber and materials were delivered for the construction of the house and garage by the lumber company. A greater portion of the lumber-and-materials account was paid through financing plans made by the Crispins through joint arrangements with the contractor. The unpaid balance due plaintiff appellee, which in-

volved some millwork and other materials, was in the amount of $724.67.

There was a balance due on the claim of the O'Rourke Construction Materials Company of $108.55 and this company filed a mechanic's lien. The balance due H. T. Rasmussen for materials and supplies, and for which a mechanic's lien was filed, was $180. The lien claim of Louis Zane, who also had furnished materials and supplies, was for a balance due in the amount of $66.

I. It is the contention of the appellants that the court erred in establishing and confirming the lien of Dalbey Brothers Lumber Company and they maintain that the mechanic's lien filed did not comply with the statutory requirements for the preservation of such a lien in that no verified statement was filed.

Our consideration of the appellants' claim that no verified statement was filed by the Dalbey Brothers Lumber Company necessitates the setting forth, in part, of their mechanic's lien. The lien proper was signed ''Dalbey Bros. Lumber Company, by Robert T. Dalbey, Credit Manager,'' and the remainder of the lien that was filed is as hereinafter set forth:

''State of Iowa, Polk County, ss:

I, Robert T. Dalbey, on oath depose and say that I am Robert T. Dalbey, Credit Manager of Dalbey Bros. Lumber Company whose name is affixed to the within statement for a Mechanic's Lien, as therein stated; that I have read the within statement, and know the contents thereof, and the statements and allegations therein made are true, as I verily believe.

Robert T. Dalbey.

Subscribed and sworn to before me by............this........day of ............, A. D. 19.........

Notary Public in and for        Co. Iowa.

State of Iowa, Polk County, ss:

On this Tenth day of April, A. D. 1941, before me, Ione Hedlund, a Notary Public in and for Polk County, Iowa, personally appeared Robert T. Dalbey, to me known to be the person named in and who executed the foregoing instrument

and acknowledged that he executed the same as his voluntary act and deed.

Ione Hedlund,
[Seal]      Notary Public in and for Polk County, Iowa.''

Section 10277 of the 1939 Code provides that:

''Every person who wishes to avail himself of a mechanic's lien shall file with the clerk of the district court of the county in which the building to be charged with the lien is situated a verified statement or account of the demand due him, after allowing all credits   *   *   *.''

It will be observed that a ''person who wishes to avail himself of a mechanic's lien shall file   *   *   *   a verified statement or account of the demand due him.''   The previously referred-to claimed error necessitates our consideration of the question whether or not that portion of the lien heretofore quoted can and should be construed to have been ''verified.''   It will also be observed that the notary's certificate did not state that the person who had signed the statement as to the correctness of the mechanic's lien had subscribed his signature and that it had been sworn to before a notary.   The form used by the notary was to the effect that the person who signed the statement ''executed the foregoing instrument and acknowledged that he executed the same as his voluntary act and deed.''   The signature of the notary and her seal were attached to what may be referred to as an acknowledgment form.   Under these circumstances, was the mechanic's lien verified?   It is our conclusion that the affiant, Robert T. Dalbey, in signing his name to the statement as to the correctness of the lien and account filed, was, as is shown by the certificate itself, conscious of the fact that he was swearing to the correctness of the lien and account, and that the lien should not be held invalid because of the statement of the notary before whom the affiant appeared.   This conclusion finds support in the statement in 1 Am. Jur., Affidavits, section 13, where it is stated:

''If the attention of the person making the affidavit is called to the fact that it must be sworn to and, in recognition of this, he is asked to do some corporal act and he does it, the instrument

constitutes a statement under oath, irrespective of any other formalities.''

The statement found in the case of State v. Hulsman, 147 Iowa 572, 573, 126 N. W. 700, 701, although dealing with a different situation, seems quite applicable to the facts that are presented to us in this appeal. It is there stated:

"The statute makes no general. requirement as to the form of an oath. The purpose of an oath is to secure the truth, and hence any form thereof which is ordinarily calculated to appeal to the conscience of the person to whom it is administered, and by which he signifies that his conscience is bound, is sufficient. 27 Am. & Eng. Enc. of Law, 682; State v. Gay, 59 Minn. 21 (60 N. W. 676, 50 Am. St. Rep. 389); O'Reilly v. People, 86 N. Y. 154 (40 Am. Rep. 525); 2 Bouv. Law. Dict. 320; 30 Cyc. 1416.''

See, also, 39 Am. Jur., Oath and Affirmation, section 13, where it is stated:

"While a large liberty is given to the form of the oath, some form remains essential. Something must be present to distinguish between the oath and the bare assertion. An act must be done and clothed in such form as to characterize and evidence it. This is so for the double reason that only by some unequivocal form could the sworn be distinguished from the unsworn averment, and the sanctions of religion add their solemn and binding force to the act. Hence, to make a valid oath, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath.''

The holding in the case of Atwood v. State of Mississippi, 146 Miss. 662, 111 So. 865, 51 A. L. R. 836, 838, is authority for the statement heretofore quoted and the conclusions we have heretofore expressed.

We feel that the statement made in the case of Stoddard v. Sloan, 65 Iowa 680, 684, 685, 22 N. W. 924, 926, also has application in the present situation. It is there stated:

"It is not denied, as we understand, that the affidavit and jurat would be presumptive evidence of what they purport to show, if the jurat expressly stated that the affidavit was subscribed and sworn to by Thomas J. Stone. The question to be determined is whether the jurat, notwithstanding Stone's name is not expressly in it, really shows the same thing. It shows that the affidavit is subscribed and sworn to. Now, the affidavit purports to be Stone's, and no one's else. A writing is not *subscribed,* unless it is signed by the person whose obligation or other paper it purports to be. If some other person than Stone, and without any authority from him, had signed Stone's name, the affidavit could not properly be said to be subscribed at all. The jurat, then, must be taken to mean that the affidavit was subscribed by Thomas J. Stone. Now, the affidavit shown to be subscribed by Stone purports to be his statement made by him in the first person, and under oath. Such an affidavit could not, we think, in any proper sense, be said to be sworn to by a person other than Stone. We have to say, then, that we do not think that the objection is well taken."

And so in the instant case, it is shown that Robert T. Dalbey signed and thus *subscribed* to the statement wherein he stated the account attached to the mechanic's lien filed was correct. It is also shown to our satisfaction, on the authority of the citations heretofore set forth, that the lien was "sworn to." Under all the circumstances, and the record presented, we hold that the lien was "verified."

Further support for our holding that there was a proper verification of the mechanic's lien filed is found in 1 Am. Jur., Affidavits, section 19, where it is stated:

"The courts are not entirely agreed as to the effect of the omission of a jurat or a signature thereto upon the affidavit. According to the majority view, such an omission is not fatal to the validity of the affidavit, so long as it appears, either from the rest of the instrument or from evidence aliunde, that the affidavit was, in fact, duly sworn to before an authorized officer. This rule is based upon the principle that a party should not suffer by reason of the inadvertent omission of the officer to perform his duty. Under this view, an affidavit defective by rea-

.son of the omission of the jurat of the officer's signature may, upon proof of its authenticity, be cured by amendment.''

There was no amendment or correction of the acknowledgment form used, but it appears to us that, as before stated, the lienholder should not suffer by reason of the use of the wrong form where under the circumstances the affidavit shows it was under oath. For support of this holding, see 2 C. J. S., Affidavits, section 16, where it is stated:

''It is essential that an affidavit appear to be sworn to on its face unless the fact is otherwise shown * * * but the affidavit will be sufficient in this respect if either the body or jurat * * * or both, recite that affiant was sworn.''

We do not believe the authorities cited by appellants support their contention.

II. Crispins, the appellants, contend that there is no proof of delivery of the items claimed to have been furnished and for which a mechanic's lien was filed by the lumber company. The original tickets and memoranda of the sale and purchase of the items in question were introduced in evidence. We hold that this evidence was admissible in support of the lien claim of the appellee lumber company. Tickets and memoranda of a like nature have been held admissible as proof of books of account. Younker Bros. v. Meredith, 217 Iowa 1130, 253 N. W. 58. See, also, Graham & Corry v. Work, 162 Iowa 383, 141 N. W. 428; Emeny Auto Co. v. Neiderhauser, 175 Iowa 219, 157 N. W. 143. Proof of similar accounts has been held to show delivery. Annotation 27 A. L. R. 1458, 1462.

III. It is the further claim of the appellants that there is a variance between the pleadings and the proof of plaintiff appellee's claim for a lien and that therefore it should not be established. Our review of the evidence presented and the pleadings causes us to come to the conclusion that there is no merit in this contention.

IV. Further claimed errors asserted by the appellants pertain to the mechanic's-lien claims filed by the O'Rourke Construction Materials Company, H. T. Rasmussen, and Louis Zane. These last-referred-to parties, who are appellees, have not favored

this court with a brief and argument. It is appellants' contention that the O'Rourke Construction Materials Company's claim should not have been established and that there is a variance between the allegations of the cross-petition and the proof submitted. We do not find merit in this contention. It is also claimed that the trial court erred in establishing the lien in favor of H. T. Rasmussen in that no cross-petition against the Crispins was filed and that Rasmussen merely filed an amended and substituted answer. We find no error in that the decree merely established the lien of Rasmussen but did not provide that this last-named party should participate in the benefits of any sale. It is also contended that this appellee withdrew his claim against Elizabeth Crispin, one of the joint owners of the property, and that it could not be established as a lien without affecting the other joint owner's interest. We think there is no merit in this last contention except as hereinafter noted. Roxbury Painting & Decorating Co. v. Nute, 233 Mass. 112, 123 N. E. 391, 4 A. L. R. 680, 684. We hold that the lien of Rasmussen cannot be upheld as to the interest of Elizabeth Crispin and that the decree should have so held. It is also claimed that the court erred in establishing a lien against the premises in favor of Louis Zane in that he had not pleaded that he had not been paid and that proof as to the allegations of the mechanic's lien in the cross-petition was lacking. There is ample proof to support this mechanic's lien. The filing of the lien and all the proceedings negative the assertion that Zane did not contend that there was an amount due him.

It is our conclusion that the decree entered by the court was correct except as heretofore noted. Under the circumstances, we hold that the decree as entered should be modified and affirmed and remanded for the entry of a decree in conformity with this opinion.—Modified and affirmed and remanded.

MULRONEY, C. J., and MANTZ, SMITH, MILLER, and HALE, JJ., concur.

SMITH and MILLER, JJ., also specially concur.

OLIVER, GARFIELD, and BLISS, JJ., dissent from Division I.

SMITH, J. (specially concurring)—I concur in the majority

opinion. It may, however, be helpful to point out some distinctions to be drawn between the cases from foreign jurisdictions, cited in the dissenting opinion, and the instant case.

Was Dalbey's statement or claim "verified" as required by our statute? What he signed was not merely the "statement" which the statute requires to be verified. *Attached to the statement was a written oath:* "State of Iowa, Polk County, ss: I, Robert T. Dalbey, *on oath depose and say * * *.*" This he signed and the notary certifies that he "acknowledged that he executed the same as his voluntary act and deed." Surely this constitutes proof that he took an oath.

The dissenting opinion cites cases from Indiana, New York (Supreme Court, Appellate Division), and Kentucky. On examination none of them seems to be authority against the majority opinion here.

In Gossard v. Vawter, 215 Ind. 581, 584, 21 N. E. 2d 416, 417, the Indiana case cited, the signature of the would-be affiant was attached to an oath, but there was *no* jurat or certificate signed by the notary. No contention was made that it was sufficient without. The prayer was that the notary be permitted to complete the verification by signing the jurat. Even in that case the court recognizes that:

"The courts of this country are not entirely agreed as to the effect of the omission of a jurat upon an affidavit, but according to the majority view such omission is not fatal to the validity of the affidavit, so long as it appears, *either from the instrument* itself or from evidence aliunde, that the affidavit was, in fact, duly sworn to before an authorized officer." (Italics supplied.).

The statements of fact in the New York cases cited in the dissenting opinion do not indicate any such record as we have here. In neither does it appear that an *oath* was signed. In each the claimant apparently signed and acknowledged the notice only. Schenectady Contracting Co. v. Schenectady Ry. Co., 106 App. Div. 336, 94 N. Y. Supp. 401, and In re James Passero & Sons, 237 App. Div. 638, 261 N. Y. Supp. 661.

The same distinction is to be pointed out as to the Kentucky case, Indiana Quarries Co. v. Simms, 158 Ky. 415, 165 S. W. 422.

There is no indication in it that the claimant subscribed on oath. He merely signed and acknowledged the "statement." That is not the case here.

The dissenting opinion, following the language of the Indiana court, refers to this oath as a "self-serving recital." This is entirely inaccurate. It is rather in the nature of an "admission"—an admission that the subscriber has bound himself by an oath. The statute requires him to so bind himself. That is the price the law exacts from him for the privilege of availing himself of a mechanic's lien. After he signed the oath and acknowledged before the officer that he signed it, and after the fact is certified by such officer and the claim thus verified is filed, surely the claimant could not be heard to repudiate the act with all its implications; he was bound by the oath he had signed. No words that could have been added by the notary would have made it more binding. The certificate, though not in form a jurat, effectively served the purpose of one. It was a certificate by an officer qualified to administer oaths and it evidenced the fact that the affiant admitted the signing of the oath.

MILLER, J., joins in this special concurrence.

OLIVER, J. (dissenting in part)—I respectfully dissent from Division I of the majority opinion.

Tunis v. Withrow, 10 Iowa 305, 308, 77 Am. Dec. 117, frequently cited with approval, holds an affidavit is not proved to have been made unless the jurat is authenticated by both seal and signature of the notary.

Francesconi v. Independent Sch. Dist., 204 Iowa 307, 312, 214 N. W. 882, 885, states:

"A verified claim is one supported by oath. Such is the universally accepted meaning of the term."

It held a certification by the claimant was not a verification and denied the claim for a lien.

In McGillivray Bros. v. District Township, 96 Iowa 629, 630, 631, 65 N. W. 974, 975, a claim was filed, with an itemized statement of materials furnished:

"It was in fact sworn to by one of the members of plaintiff's firm, but, by mistake or oversight of the notary, the jurat was not written out in said statement, nor was the notary's name signed, nor was any impression of seal thereon. Plaintiffs asked to have said statements so filed amended and corrected by adding thereto the jurat and official signature of the notary administering the oath, and that he be empowered to affix his seal thereto."

It was held that the petition for establishment of the claim containing the above allegations was demurrable because it showed on its face that the lien statement was not sworn to and that "the statute requires that the itemized statement which must be filed must be one which shows on its face that it is a sworn statement."

In Canfield Lbr. Co. v. Heinbaugh, 184 Iowa 149, 152, 168 N. W. 776, 777, we say:

"The [mechanic's] lien is dependent upon a compliance with these statutes. It is a statutory lien, that comes to the plaintiff only upon compliance. * * * a claim must be filed as the statute requires, duly verified * * * it is necessary that there be a verification in order to make the lien effectual * * *."

O'Ferrall v. Simplot, 4 (Clarke) Iowa 381, 396, 398, holds that, while it may be shown that a deed was never in fact acknowledged, as in the case of fraud or a false certificate, this right must not be confounded with a claim to supply defects in the officer's certificates and that it cannot be shown by evidence aliunde that there were omissions therein.

In Milligan v. Zeller, 197 Iowa 79, 82, 196 N. W. 793, a case involving a mechanic's lien, we reiterate the holding of the McGillivray case that the statute requires the filing of an itemized statement which shows on its face that it is a sworn statement. From the annotations in 1 A. L. R. 1573, and 116 A. L. R. 589, "Affidavits of liens and mortgages," which cite the McGillivray case, it appears that courts of other jurisdictions are not agreed as to the sufficiency of an unsigned or omitted jurat in instruments of such character.

Gossard v. Vawter, 215 Ind. 581, 584, 21 N. E. 2d 416, 417, which cites and follows the McGillivray case, states:

"It [the statute] requires that such petition shall be verified by the contestor. This means, as we understand it, that the petition shall not only be sworn to but that it shall also bear a jurat, that is, a certificate by the officer who administered the oath reciting that fact. * * * No self-serving recital in the body of the petition and no evidence, aliunde, could supply the requisite certification which was manifestly absent."

The majority opinion quotes from Stoddard v. Sloan, 65 Iowa 680, 683, 22 N. W. 924, 925, and State v. Hulsman, 147 Iowa 572, 126 N. W. 700. In the former, the jurat, signed and sealed by the notary, recited: "Subscribed in my presence and sworn to before me this tenth day of March, 1880." Proof that the instrument was *subscribed* and *sworn to* came from the jurat of the notary and not from a self-serving recital by the subscriber in the body of the instrument. In the latter case, the instrument purported to have been signed and sworn to before a notary. The point involved was not the sufficiency of the jurat but the manner in which the oath was orally administered. In the case at bar, the question is not one of distinguishing "between the oath and the bare assertion," as suggested in the Hulsman case. The question here is between verification by the subscriber and a mere acknowledgment by him that his execution of the instrument was voluntary.

"An acknowledgment cannot take the place of a verification * * *." Favello v. Bank of America Nat. Tr. & Sav. Assn., 24 Cal. App. 2d 342, 347, 74 P. 2d 1057, 1059.

No doubt some act attended or followed the signing by the subscriber. Was there "an unequivocal and present act" by which he took upon himself the obligation of an oath? The notary certified that the "act" of the subscriber in this case was merely an acknowledgment that he executed the instrument as his voluntary act and deed. This attestation clause is in the language authorized by Code, 1939, section 10103, for an acknowledgment. An acknowledgment and a verification are substantially different.

"An acknowledgment is a verification of the fact of execution, but is not a verification of the contents of the instrument executed." 1 C. J. S. 778, section 1.

I do not agree that what the statute denominates a certificate of acknowledgment is not only that but is also something different, to wit, a jurat.

The majority opinion quotes a statement from 2 C. J. S. 952, section 16, that "the affidavit will be sufficient * * * if * * * the body * * * recite that affiant was sworn." The single authority cited in support of this statement is Bickerdike v. Allen, 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782. That case was a collateral attack upon a judgment, which recited there was presented to the court due proof of publication of notice of suit, on the ground that the affidavit for publication was insufficient because the jurat, which was duly signed and sealed, merely stated the affidavit had been subscribed, without a recital therein that affiant was sworn.

Ramer v. Wright, 62 Colo. 53, 56, 159 P. 1145, 1146, 1 A. L. R. 1560, holds directly to the contrary. In the Ramer case the body of the verification recites that affiants "each for himself * * * deposes and says." The jurat duly signed and sealed by the notary reads, "Subscribed to before me this 10th day of July, 1915." The decision states:

"It is the certificate of the officer from which it must be determined whether or not an oath was administered. It is true that in the body of the statement the signers say that they 'depose and say.' But, if it be assumed that 'to depose' means 'to swear,' the certificate does not show that the signers even 'deposed' before the officer. It recites only that they subscribed."

The majority opinion also quotes from 1 Am. Jur. 946, section 19, to the effect that the omission of the jurat or signature is not fatal if it appears from the rest of the instrument, or from evidence aliunde, that the affidavit was duly sworn to before an authorized officer. As above noted, decisions of this court are to the contrary. However, the quoted rule is not, in any event, applicable to the facts of this case. This is not a case of the omission of a jurat or signature or a defect in a

jurat. The certificate of acknowledgment is complete and regular. Nor was there offer of evidence aliunde to show any error or omission.

The inference the majority opinion would draw from the recital in the body of this instrument that it was made under oath would merely contradict the certificate. The certificate of the notary states that the subscriber acknowledged that he executed the same as his voluntary act and deed. Such certificate is the proof or evidence of what was done. If self-serving recitals by the subscriber in the body of an instrument, in and of themselves alone, can contradict and nullify a complete and regular statutory certificate of acknowledgment, such certificates will no longer have substantial legal force.

In effect, the majority opinion holds a notarial certificate of acknowledgment takes the place of a jurat to an affidavit for a mechanic's lien.

Indiana Quarries Co. v. Simms, 158 Ky. 415, 165 S. W. 422, a mechanic's-lien case, holds the statement in the certificate that claimant "acknowledged the execution of the foregoing notice of lien" was insufficient to show the statement was sworn to. Accordingly, the dismissal of the petition was affirmed.

In Schenectady Contracting Co. v. Schenectady Ry. Co., 106 App. Div. 336, 94 N. Y. Supp. 401, the notice of mechanic's lien was not verified. Instead of a verification the claimant attached a certificate of acknowledgment. A demurrer to the petition was held to have been properly sustained.

The question involved in Pasqualetti v. Hilson, 43 Cal. App. 718, 720, 185 P. 693, 694, was the effect of filing an acknowledged instrument which the mechanic's-lien statute required to be verified. The court said:

"It would seem to be quite clear that a mere acknowledgment of the execution of such a notice by the person signing the same would not amount to a verification thereof and would not suffice to satisfy the requirements of these clauses of the section of the code in question in that regard."

In the case of In re James Passero & Sons, 237 App. Div. 638, 639, 261 N. Y. Supp. 661, 662, the mechanic's-lien claimant (a corporation) moved to correct and amend the notices, al-

leging they "had in fact been verified, i. e., that the subscriber to each of the notices had orally sworn to the truth of the statements contained in the notices before a notary, although no written form of verification had been attached to the instruments by the notary." The court stated that unless such a claimant files a notice substantially as prescribed by statute he has no lien on the real property:

"The notice in question to which a corporate acknowledgment was subjoined, but no other certificate of oath, was not verified in accordance with the statute. * * * Verification as used in the statute includes both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by the notary * * *."

The court not only denied the motion to amend but also sustained a motion made by the opposing party for an order summarily discharging the liens of record.

The authorities relied upon in the majority opinion do not directly involve mechanic's liens, and the opinion merely discusses oaths, affidavits, and verifications in general. Our statute provides that a mechanic's lien may be perfected by filing a verified statement of account, setting forth certain matters. [Code, 1939, section 10277.] Mechanic's liens affect the record title to real estate and the rights of third persons. In that respect they are comparable to various other instruments which, when filed or recorded, affect the title to real or personal property and give notice to third persons. Hence there is less justification for relaxing their requirements than there might be in some cases. Mechanic's liens are rights given by statute and our decisions have heretofore required that one seeking a benefit under such statute must substantially comply with its provisions. I would not depart from this rule.

GARFIELD and BLISS, JJ., join in this dissent.